**Murray E. Singer**

Attorney at Law

14 Vanderventer Avenue
Suite 147
Port Washington, New York 11050
email: msingerlaw@gmail.com

tel: (516) 869-4207
fax: (516) 706-7085
mobile: (516) 662-4950

December 29, 2024

Hon. Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    US v. Charles Powell et al
       21-CR-572

Your Honor:

I represent Charles Powell in the above-referenced case. I write to respond to certain of the motions in limine filed by the government and dated December 6, 2024, and move for severance of Mr. Powell's trial from that of co-defendant Brian Castro. Specifically, I am writing in opposition to the requests made in parts 4, 6, 7, 9, and 11 of the government's motion in limine. In consideration of these issues, I can represent to the Court that the defense of Mr. Powell will not include any challenge to the identity of Mr. Powell or his presence at the scene of the incident on October 7, 2020.

### 1. RESPONSE TO GOVERNMENT'S MOTION IN LIMINE #4 - THE CASTRO RECORDING

The Government should not be permitted to introduce against Mr. Powell those portions of Castro's recorded statement where he discusses the "robbery" and the amount of money allegedly taken during the "robbery". First, under the circumstances present here, it cannot be said that these statements "would not have [been] made" unless Castro believed them to be true, as per United States v. Stratton, 779 F.2d 820, 828 (2d Cir. 1985); Fed. R. Evid. 804(b)(3)(A). Nor can it be said that the statements as to whether a robbery took place and the amount of money allegedly taken are corroborated and trustworthy. United States v. Stratton, supra, 779 F.2d at 828; Fed. R. Evid. 804(b)(3)(B). As the Second Circuit stated in United States v. Dupree, 870 F.3d 62, 80 (2d Cir. 2017) statement(s) are sufficiently corroborated to support introduction into evidence only where there is a "strong, [and] not merely allowable," inference of trustworthiness."

There is every reason to believe that Castro's statements about the robbery were not true. According to CW1, Castro was trying to earn "street cred" by "bragging" that he had taken part in this incident. 3500 CW1-28, p 2 and 3500-CW1-34, p. 3. Had the purpose of the plan - to commit

a robbery - not been successful, and Castro, having been fought off by intended victims, gotten nothing but instead had killed someone, this could be viewed as humiliating. It makes sense, then, that Castro would try to puff up the incident. This information, from the government's own witness, significantly undermines the argument that the statement would only have been made had Castro believed it to be true.

Moreover, Castro's claims in the recorded statement about the amount of money allegedly stolen find no support in any other evidence. Indeed, statements made by CW2, who entered the premises with Mr. Powell and Mr. Castro, at first make no reference to anything being taken (3500 CW2-7 and 3500 CW2-14), then include statements by CW2 to Mr. Coward that he had not taken anything and by Mr. Coward to CW2 that he had not taken anything (3500 CW2-17, p. 4), and, in later proffers, statements by CW2 to law enforcement that significantly smaller amounts had been taken (3500 CW2-20, p. 2). There is thus very little about Castro's statements about the alleged robbery that support that these particular statements were "clearly" trustworthy, as required under Fed. R. Evid. 804(b)(3)(B).

## 2. RESPONSE TO GOVERNMENT'S MOTION IN LIMINE #6 - EVIDENCE OF UNCHARGED ACTS

The government seeks to introduce evidence of uncharged acts of Mr. Powell, but fails to specify what uncharged acts of Mr. Powell they are seeking to introduce at trial. This is not surprising, as CW2 had never met Mr. Powell prior to getting into the car on the night of the incident (3500 CW2-7, p. 2), and CW1 only claimed to have known Mr. Powell "on a casual basis" (3500 CW1-28, p. 2) and to have seen him either hanging out on multiple occasions (3500 CW1-33, p. 1 and 3500 CW1-34, p. 3) or observed him selling drugs with Coward (3500 CW1-30, p. 1). It appears from their motion that they simply want to portray Mr. Powell as a drug dealer who knew his co-defendants prior to the incident charged here. They should not be permitted to do so.

Certainly a claim that Mr. Powell sold drugs at dates and locations unrelated to the charged incident is not relevant or probative of the crimes charged here. Yet the government's first argument for admissibility of this general testimony is that the evidence is "direct proof of the charged crimes." That is certainly not the case.

The government's other argument for admissibility of the claim that Mr. Powell sold drugs on other occasions is that this evidence is admissible under Fed. R. Evid. 404(b)(2), which permits evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." We disagree. Mr. Powell had little to no relationship with CW1 and made no statements to CW1 about the incident at issue here. The only possible reason for offering evidence that Mr. Powell had sold drugs on prior occasions is to denigrate him in front of the jury, a use prohibited under Fed. R. Evid. 404(b)(1).

We therefore urge this Court to find that any possible probative value of a claim that Mr. Powell was observed selling drugs at times unrelated to the charged incident is far outweighed by

the prejudice to Mr. Powell of these unverified assertions. We urge this Court to deny the government's application as to Mr. Powell.

### 3.  RESPONSE TO GOVERNMENT'S MOTION IN LIMINE #7 - EVIDENCE OF ACCESS TO FIREARMS

The government seeks to introduce evidence that Mr. Powell had access to firearms in the two months prior to the charged incident and in the year following the charged incident. What they fail to compelling demonstrate is why such evidence is needed to establish the charged crimes.

The government will introduce video evidence that shows Mr. Powell holding and firing a weapon at the victim, Mr. Maxwell, causing his death. Whether Mr. Powell possessed any other weapon on any other date is wholly irrelevant under the circumstances here. It adds nothing to the video evidence. It is not needed to, and does not establish, that Mr. Powell was present at the scene, carried a firearm at the scene, or shot and killed Mr. Maxwell.

The government suggests that this evidence is necessary to establish that Mr. Powell had access to firearms "in and around the time of the murder." This argument is at best disingenuous, given the video showing Mr. Powell firing a weapon during the charged incident.

The government also argues that this evidence would not be unduly prejudicial to Mr. Powell, since the charges against him are already so serious. They further argue that any prejudice could be mitigated with a limiting instruction. This is nonsense. The government is seeking to denigrate Mr. Powell in every way and at every turn so that any factual or legal defense proferred by Mr. Powell will be rejected. Such use is strictly prohibited under Fed. R. Evid. 404(b)(1).

Under the circumstances of this case, where there is direct video evidence of Mr. Powell's possession and use of a firearm, the extraneous evidence sought to be introduced by the government has little, if any, probative value. Therefore, the prejudice to Mr. Powell from introducing damning evidence unrelated to the charged crimes is enormous, and far outweighs any probative purpose suggested by the government. This evidence should be precluded from the trial.

### 4.  RESPONSE TO GOVERNMENT'S MOTION IN LIMINE #9 - EVIDENCE OF FLIGHT

The government seeks to introduce evidence that Mr. Powell fled from local law enforcement in New Jersey in October, 2021 to establish consciousness of guilt as to the crimes charged, which occurred one year earlier, in October, 2020. The government's offer fails to establish the admissibility of this evidence.

The government cites to United States v. Al-Sadawi, 432 F.3d 419 (2d Cir. 2005) to support its position, but the factors cited by the Second Circuit in Al-Sadawi in fact do not support their contention. Al-Sadawi states that the probative value of flight as an admission by conduct is

dependent upon the degree of confidence a court can have in four necessary inferences. Id. at 424. The third required inference is that the consciousness of guilt must be concerning the "crime charged." Id. The government cites to no evidence to support that inference.

The government's proffer states that Mr. Powell was detained by local law enforcement in New Jersey following an auto accident in October, 2021. According to the government, Mr. Powell was "informed of an active warrant" and was "informed by law enforcement he would be taken into custody pursuant to the warrant." Mr. Powell then fled from the police. From this the government jumps to the conclusion that Mr. Powell fled due to his guilt for a crime that took place in Brooklyn, New York one year earlier. No explanation is provided as to how that leap was made, for there is none.

Again, the government seeks to introduce extraneous evidence to denigrate Mr. Powell in front of the jury. And again, such evidence is strictly prohibited under Fed. R. Evid. 404(b)(1). This Court should deny their request.

## 5.  RESPONSE TO GOVERNMENT'S MOTION IN LIMINE # 11 - CROSS-EXAMINATION OF MR. POWELL REGARDING HIS PRIOR CONVICTION

The government seeks permission to cross-examine Mr. Powell about his lone conviction for possession of a firearm, a crime committed when he was 18 years old, because, they argue, it is "probative of [his] character for truthfulness." We urge the Court to deny this request.

Federal Rule of Evidence 609(a)(1) permits a court to deny such a request where the probative value of the prior conviction does not outweigh the potential for prejudice to the defendant. Here, Mr. Powell will be 26 years old at the time he would testify. The crime - possession of a firearm - was committed when he was a teenager, and has nothing to do with honesty. Moreover, the crimes charged here involve the possession and use of a firearm, which simply increases the likelihood that the jury will consider the prior conviction for Mr. Powell's propensity to the commit the crimes charged - an improper use - rather than for the only proper use, credibility.

We submit that the probative value of this cross-examination is far outweighed by the prejudice to Mr. Powell that will accrue from its use. We therefore urge the Court to deny the government's request.

## 6.  THE COURT SHOULD SEVER MR. POWELL'S TRIAL FROM THAT OF MR. CASTRO

In addition to the unreliable statements by Mr. Castro discussed in Part 1, above, Mr. Castro described Mr. Powell's actions as follows:  "Niggas trying to get out the door, you feel me, the homie - the nigga opened the door  so the homie went on outside.  Payback [U/I] was in the back, you feel me . . . And Payback starts busting, Vroom, vroom. Like four gunshots." 3500 CW1-11, p. 5. The recording, which the government seeks to introduce in full, also includes CW1's assumptions

about Mr. Powell - "no wonder I haven't seen Payback, cuz Payback, I don't know if Payback laying low too." 3500 CW1-11, p. 9. We submit that these various comments, alone and in combination with each other, result in significant prejudice to Mr. Powell and his ability to get a fair hearing before a jury. We therefore urge this Court, pursuant to Fed. R. Crim. Pro. 14(a), to sever Mr. Powell's trial from that of Mr. Castro.

Fed. R. Crim. Pro. 14(a) permits a court to sever defendants for trial where a defendant would be prejudiced by a joint trial. Zafiro v. United States, 506 U.S. 534, 538, 113 S.Ct. 933, 937 (1993). As the Supreme Court stated in Zafiro, "[w]e believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539, 113 S.Ct. at 938.

We contend that Mr. Castro's statements to CW1 provide an unreliable account of the actions he described. Numerous statements in his proffers differ significantly from the account he provided to CW1. And his motivation in making the comments - to gain street credibility by bragging about an event - cast further doubt on his reliability. Permitting Mr. Powell's jury to hear these claims, particularly where Mr. Powell has no ability to challenge these contentions through cross-examination, create significant prejudice to Mr. Powell, and, we submit, will significantly impact the jury's ability to make a "reliable judgment about guilty or innocence." Therefore, we urge this Court to sever Mr. Powell's trial from that of Mr. Castro.

Thank you for your consideration.

Very truly yours,

*Murray Singer*

Murray Singer

cc:    All counsel by ECF and email